Christopher POST, Robert Jacobson, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 18, 1979.

Certiorari Denied by Supreme Court April 2, 1979.

Wilbur F. Cash, Covington, for Post.

G. Michael Acree, Covington, for Jacobson.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Michael Whitaker, Dist. Atty. Gen., Somerville, Preston Parks and Jon Kerry Blackwood, Asst. Dist. Attys. Gen., Somerville, for appellee.

## OPINION

TATUM, Judge.

The appellants, Robert Manley Jacobson and Christopher Edward Post, appeal from drug convictions. Both were presented by the Grand Jury for possessing LSD with intent to sell and possessing marijuana with intent to sell. The trial court directed a verdict of not guilty as to both defendants on the charge of possessing marijuana with intent to sell, but left standing the lesser included charge of simple possession of marijuana. The appellant, Jacobson, was convicted of possessing LSD with intent to sell and sentenced to not less than 10 years nor more than 15 years and fined $10,000 as punishment for this offense. He was also convicted for simple possession of marijuana and sentenced to serve 11 months and 29 days in the County Jail and fined $1,000. Post was convicted of simple possession of LSD and simple possession of marijuana and sentenced to serve 11 months and 29 days and fined $1,000 in each of these cases. A third defendant, Carla Suratt, was convicted of simple possession of LSD and marijuana, but she did not appeal. The sentences of confinement for both appellants were ordered to run concurrently and the fines were cumulative. The fines were later suspended, but the trial judge denied a request for suspension of the remainder of the sentences.

Both appellants assigned error attacking the composition of the Grand Jury that indicted them, testing the weight and preponderance of the evidence, and alleging a search and seizure to be unconstitutional. In addition, Jacobson alleges that the trial judge erred in allowing the State to question him about a prior arrest. All convictions are affirmed.

■ We first address the assignment alleging that the system employed to select the Grand Jury that indicted the appellants systematically excluded blacks from serving. Though the appellants are white, they have standing to raise this question. *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).

The foreman of the Tipton County Grand Jury, as in all of the Tennessee counties, is appointed for a two-year term by the trial judge. T.C.A. § 40–1506. The present foreman is white and has been serving in that capacity for several years.

The appellants challenge the system for selecting the remaining 12 members of the jury. A new Grand Jury is chosen for each term of the court by the three Jury Commissioners appointed by the court. Beginning with the March term, 1978, when the appellants were indicted, the panels for the entire jury requirements of the court (Grand and Petit) were selected in the following manner. Tipton County was divided into three territories and each of the Jury Commissioners was assigned one territory by the Chairman. Each Commissioner would take the voter registration books for his assigned area and would select each tenth name from the voter registration list. One of the commissioners stated that he made a conscious effort to select blacks, but the remaining two members listed every tenth name, regardless of race. One commissioner testified that when they knew the tenth name to be a person who was physically infirm, then they would go to the eleventh name.

The names selected from the voter registration list would be placed in a large box on separate cards. The judge designated the total number of Grand and Petit jurors required for the March 1978 term of court. This number of names was then drawn from the box by a child under the age of 10 years. In some instances, when a name drawn was known to be that of an unusually busy farmer, his name would be replaced in the box and another name drawn since springtime is a busy season for farmers. Similarly, names were replaced in the box if the person was known to be temporarily ill; when names of persons who had become physically incapacitated were drawn, these names were permanently discarded.

On the first day of the term, the trial judge excused those jurors selected at random from the box by the 10-year old child who had good cause or excuse for not serving as jurors. The names of those remaining were placed in a hat and a random selection was made of twelve of them for Grand Jurors. Those remaining were used as Petit Jurors.

This random selection system produced three black persons and nine whites for the Grand Jury that indicted the appellants. There is no evidence of the racial make-up of Tipton County for the year 1978, but the 1970 census indicates that at that time, 67.5% of the population of the County was white, 32.4% was black and the remaining .1% was other minorities.

■ From 1974 to 1978, the jury commission used telephone directories instead of voter registration lists to select jurors. The telephone directories often resulted in the selection of a lesser percentage of blacks than the voter registration roles. We assume that this is because a lesser percentage of blacks subscribed to telephones than whites. In any event, the use of the voter registration roles are generally considered the most inclusive list of names for potential jurors. *Jefferson v. State,* 559 S.W.2d 649 (Tenn.Cr.App.1977).

■ The appellants insist that in deciding this case, we should consider that from 1968 to 1978, a total of 374 Grand Jurors were summoned of whom 315 were identified as white, 57 as black and 2 unidentified as to race. Since the Tipton County Criminal Court adopted a new system for selecting jurors in 1978 and the jurors who indicted appellants were selected under the new system, we hold that discrimination, if any, in the system employed prior to 1978 is immaterial in the determination of this case. In *Brown v. Allen,* 344 U.S. 443, 479, 73 S.Ct. 397, 418, 97 L.Ed. 469, 500 (1953), the United States Supreme Court said:

. . . As this venire was the first drawing of jurors from the box after its purge in July 1949, following the new statute and *Brunson v. State of North Carolina,* 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132, decided here, March 15, 1948, the long history of alleged discrimination against its Negro citizens by Vance County jury commissioners is not decisive of discrimination in the present case. Former errors cannot invalidate future trials. Our problem is whether this venire was drawn from a jury box, invalidly filled as to Speller because names were selected by discriminating against Negroes "solely on account of race and/or color." It is this particular box that is decisive, cf. *Cassel v. State of Texas,* 339 U.S. 282, 290 and 295, 70 S.Ct. 629, 633, 635, 94 L.Ed. 839. Past practice is evidence of past attitude of mind. That attitude is shown to no longer control the action of officials by the present fact of colored citizens' names in the jury box.

■ We hold that the ratio of blacks and whites comprising the Grand Jury that indicted the appellants was not disproportionate. We also hold that the State has shown a racially neutral criteria in procedure was employed in the selection of the Grand Jury that indicted the appellants. See *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Jefferson v. State, supra.*

■ The appellants rely upon *Mitchell v. Rose,* 570 F.2d 129 (6th Cir. 1978) for the proposition that the composition of the Grand Jury was unconstitutional because of the systematic exclusion of Negroes as foremen of the Grand Jury. This is a decision of the United States Court of Appeals, 6th Circuit, holding that the selection of white Grand Jury foremen in Tipton County was discriminatory and invalidated indictments returned by the Grand Jury. The United States Supreme Court has granted certiorari in that case on application of the State. The decision was based largely on an affidavit of the Tipton County Criminal Judge, stating he "never really gave any thought" to appointing black persons as Grand Jury foreman. The trial judge never explained or elaborated on this statement in the affidavit, but he does so in the record before us. The trial judge said in making that statement he intended to say "The court had no feeling whatsoever that race should be injected into it (selection of the Grand Jury foreman)." He further explained that the office of Grand Jury Foreman is an administrative one that pays only $10 a day. He has had the present foreman for several years; as the foreman is competent and willing to serve, the Judge did not want to terminate him for racial reasons. We find that the selection of the Grand Jury foreman was not racially motivated. The fact that no Negro has been a jury commissioner in Tipton County at least since the 1950's is not in itself unconstitutional discrimination. See *Bailey v. Henslee,* 287 F.2d 936 (8th Cir. 1961) and cases therein cited.

Both appellants have made several assignments of error attacking the weight and sufficiency of the evidence. We will summarize the evidence as accredited by the jury. On the evening of February 7, 1978, Officer Larry Godwin of the Memphis Police Department, working undercover, went to a mobile home in Tipton County for the purpose of arranging a drug transaction with the appellant, Jacobson. When he entered the mobile home, he found both appellants and a person named Gerald Dollwet there. Godwin arranged with Jacobson to buy 5,000 dosage units of LSD for $10,000. The transaction was to take place later in the week. Post was present during the conversation, but did not participate in it; Dollwet's participation was limited. While discussing the drug transaction with Jacobson, Jacobson told the officer that he could sell 600 tablets of LSD "now."

Godwin observed a fruitcake can on a coffee table about three feet from him. Next to the can, there was approximately 1 ounce of a plant substance which appeared to the officer to be marijuana. Inside the can, he observed what appeared to him to be LSD tablets and drug paraphernalia. He obtained a search warrant based on these observations and returned to the trail-

er on February 11, 1978, with other officers. They found 206 dosage units of LSD in the fruitcake can, and a quantity of marijuana in the refrigerator, resulting in this prosecution.

The appellant, Post, testified that he was not aware of LSD being kept in the mobile home, but he knew that marijuana was kept there for consumption. Post paid one-half of the rent for the mobile home to Jacobson and Jacobson paid the landlord. Suratt was permitted to live there free of rent because she had no place else to stay. Post testified that he did not spend much time there, but spent nights there so that he could drive Suratt to school each morning.

Jacobson testified that he was only acting as an intermediary for Dollwet for the sale of the 5,000 units of LSD. He testified on direct examination that Dollwet was the supplier and "he's who I got it (the 5,000 units) from." Jacobson explained that Dollwet did not want to meet Godwin and that he was to receive $1,000 for his participation as intermediary in that transaction.

He stated on the morning of February 11, as he and Dollwet were leaving to go to Raleigh Springs Mall, Dollwet gave him the 206 units of LSD which the officers later found during the search. Dollwet asked him to put it away until they returned from Raleigh Springs Mall, so he put it in the fruitcake can. Jacobson testified that his co-defendants were not aware of this. While further testifying on direct examination, he said that he did not return for the LSD in the fruitcake can because he "was arrested that afternoon in Shelby County." He admitted keeping marijuana in the mobile home for his own use and testified that his co-defendants were aware of this; he gave marijuana to his co-defendants from time to time.

█ In considering the appellants' assignments relating to the weight and sufficiency of the evidence, we must bear in mind certain firmly established rules. The jury verdict, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973); *Hawkins v. State,* 527 S.W.2d 157 (Tenn.Cr.App.1975). Such verdict displaces the presumption of the appellants' innocence, raises a presumption of their guilt, and puts upon them the burden of showing that the evidence preponderates against the verdict and in favor of their innocence. *State v. Sneed,* 537 S.W.2d 699 (Tenn.1976); *State v. Bullington,* 532 S.W.2d 556 (Tenn.1976).

█ The 206 units of LSD were found in the fruitcake can on the coffee table in the living room and marijuana was found in the refrigerator; both appellants, as joint occupants, would be expected to use and control these areas. Post admitted knowing that marijuana was kept in the mobile home and Jacobson admitted knowing that the LSD and marijuana were there. We hold that a jury question was presented by the evidence adduced in this case. *Armstrong v. State,* 548 S.W.2d 334 (Tenn.Cr.App.1976); *Berry v. State,* 4 Tenn.Cr.App. 592, 474 S.W.2d 668 (1971). There was sufficient evidence to support the jury verdicts and the trial judge properly refused to direct verdicts of acquittal. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978).

█ Post also complains that the trial judge directed a verdict in his favor reducing the charge of possessing marijuana with intent to sell to the lesser included charge of simple possession of marijuana. He argues that this action on the part of the trial judge indicated to the jury that the trial judge believed him guilty of simple possession of marijuana. We disagree with this argument. The reduction of the charge benefitted Post and no prejudicial effect is shown. This assignment is overruled.

Both appellants attack the search warrant on the ground that the affidavit upon which it was issued stated that the affiant, Officer Godwin, "observed ___ marijuana and LSD" while the affiant at trial testified that he was not positive that the substance he had seen was marijuana and LSD, but only that these substances appeared to him to be marijuana and LSD. Officer Godwin

also testified, "The only way to know for sure is to send (the substances) to a toxicologist."

In considering a related question, this court, speaking through Presiding Judge Walker, in *Dishman v. State*, 3 Tenn.Cr. App. 725, 729, 460 S.W.2d 855, 857 (1970), said:

> The test for determining the validity of a search warrant is that pronounced in the leading case of *Aguilar v. Texas* [378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723] supra, and fully considered by our Supreme Court in *Owens v. State*, 217 Tenn. 544, 399 S.W.2d 507 (1965). *Spinelli v. United States* [393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637] supra, further explained the principles of *Aguilar*. In neither *Aguilar* nor *Spinelli* was the affidavit based on information from an eyewitness who saw the offense. The affidavit before us was based on the informer's personal observation of the alleged offense. He saw marijuana being delivered into Dishman's house. Personal observation is not a matter of conjecture but rather carries with it a sufficient element of probability which compels inquiry in this kind of case. See *Commonwealth v. Somershoe*, 215 Pa.Super. 246, 257 A.2d 341.

> The magistrate in this type of a case must make an independent and detached appraisal of the affidavit in order to determine the presence of statements setting forth "underlying circumstances" as referred to in *Aguilar*; and in making the appraisal the affidavit must be read in a common sense and nontechnical manner. See *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684.

In *Commonwealth v. Somershoe*, supra, the court said:

> " * * * Affidavits of probable cause are tested by much less vigorous standards than those governing the admissibility of evidence at trial. *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); only the probability and not a prima facie showing of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); in judging probable cause issuing magistrates are not to be confined by niggardly limitation or by restrictions on the use of their common sense, *United States v. Ventresca*, supra, and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)."

See also *State v. Pietraszewski*, 172 N.W.2d 758 (Minn.1969).

To be positive that the material delivered to the defendant was marijuana, a chemical examination would be required. Many common plants look like it. Before he can obtain a search warrant, however, the agent is not required to have the information the search warrant would disclose. Proof of the probability and not of the crime is all that is required.

Probable cause does not import absolute certainty. It only imports reasonable grounds for belief, and the magistrate issuing the search warrant is the authority to be satisfied that probable cause exists. He performs a judicial act which is not subject to review unless there are no material facts upon which he bases his discretion. See *Owens v. State*, supra.

Applying our own common sense to this assignment, we are completely satisfied that the Magistrate did not assume from reading the affidavit that a chemical examination had been made of the material the affiant saw in the appellants' mobile home. The affidavit stated "the affiant has been an officer of the Memphis, Tennessee Police Department, assigned to the Memphis Metro Narcotics Division for over four years and has seen marijuana and LSD on many occasions and has been trained in the recognition of such drugs." Obviously, the magistrate was aware that the affidavit was based on the affiant's identification by observation. We hold that the appellants have not demonstrated that the affidavit contained a false statement or was issued as a result of fraud or collusion. *State v.*

*Little,* 560 S.W.2d 403 (Tenn.1978); *Woods v. State,* 552 S.W.2d 782 (Tenn.Cr.App. 1977). On its face, it is sufficient to establish probable cause.

■ The appellants further attack the search warrant saying that the issuing magistrate did not comply with T.C.A. § 40–518 as he did not endorse on the warrant the hour issued. In issuing the warrant, the magistrate used a form with a place provided for noting the hour issued with "A.M." and "P.M." printed after the space for the hour of issuance. The magistrate neglected to strike either "A.M." or "P.M." This question was not raised at trial and was not assigned in the motion for new trials; it is being raised for the first time on appeal. For these reasons, the question cannot now be considered. *Manning v. State,* 500 S.W.2d 913 (Tenn.1973); *Hawkins v. State,* 543 S.W.2d 606 (Tenn.Cr. App.1976); Rule 14(4) and (5), Tennessee Supreme Court Rules, as adopted by this court, 2 Tenn.Cr.App. 746 (1967).

■ In another assignment, the appellants say that the trial judge should have declared a mistrial because of comments made by the Assistant District Attorney General in final argument. He said that, "Those two hundred and six hits of LSD are just as dangerous—to human beings as two hundred and six pistols." The prosecuting attorney, referring to the LSD, also said, "That was a cancer to the society here in your good county." The trial judge overruled an objection to these remarks. The appellants argue that these statements were not supported by the evidence and tended to "inflame passions" of the jury. Obviously, these statements were neither intended literally nor taken literally, but were illustrative of the danger of LSD. The danger of this substance is a matter of common knowledge; the subject was not dwelled upon, and we do not find that the argument was of such nature as to inflame passions of the jury. Under our adversary system, the District Attorney General is an advocate, as is counsel for defense, and proper oratorical emphasis is denied to neither. *Henderson v. United States,* 218 F.2d 14, 50 A.L.R.2d 754 (6th Cir. 1955) *cert. den.* 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). Our courts give great latitude to counsel in expressing their views of the case to the jury. In support of this policy, trial judges have wide discretion in controlling the argument of counsel, and their action will not be reviewed absent abuse of that discretion. *State v. Sutton,* 562 S.W.2d 820 (Tenn.1978); *Smith v. State,* 527 S.W.2d 737 (Tenn.1975). We find no abuse of discretion in the trial judge's overruling objection to the remarks above referred to. There was no contemporaneous objection to another statement made by the Assistant District Attorney General during argument. Without such contemporaneous objection, the error, if any, is waived. *State v. Sutton, supra* ; *Anglin v. State,* 553 S.W.2d 616 (Tenn.Cr.App.1977). This assignment is overruled.

Next, Jacobson complains of the trial judge's permitting the State to question him as to a prior arrest in Shelby County, Tennessee, for possession of LSD. On cross-examination of Jacobson, he was asked:

Q. Let me ask you this, Mr. Jacobson: Are you lying when you tell this jury that you never had anything else to do with LSD?

A. I didn't say I had anything else to do with LSD, sir. I said I had nothing else to do with sales of LSD.

Q. And you were not telling this jury a lie when you say that?

A. No, sir.

After the above questions had been asked, a bench conference was held in which the trial judge said he would permit the State to question Jacobson about the arrest for impeachment purposes, on the provision that the State not question him as to his status in regard to the Shelby County case and on the further provision that the State connect the questions with the case on trial. The following questions and answers were then given:

Q. (By General Blackwood) Were you not arrested February the 11th, in Shelby County, Tennessee?

A. Yes, I was.

Q. Raleigh Springs Mall?

A. Yes, sir.

Q. Were you not arrested and charged with selling LSD?

A. I'll have to refuse to answer that on the grounds that it may tend to incriminate me, but I will state that they were one and the same thing.

 We think that the trial judge erred in permitting the question eliciting the mere arrest of Jacobson. Questions pertaining to mere indictments, charges, and accusations are not generally admissible to impeach a witness. *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) and cases therein cited.

 However, the error was harmless in context of the record in this case. The appellant had previously testified during questioning by his own attorney that he was arrested in Shelby County on February 11. The evidence already before the jury left no doubt that the arrest was for the planned sale of the 5,000 units of LSD when Officer Godwin visited the mobile home on February 7. Though error, this evidence communicated nothing to the jury that was not already known to it and thus, the error was harmless. T.C.A. § 27–117.

The appellant, Post, has withdrawn the remaining assignment relating to the constitutionality of the fines imposed.

All of the assignments of error are overruled and the judgments of the Criminal Court are affirmed.

DWYER and O'BRIEN, JJ., concur.