STATE of Tennessee, Appellant,

v.

Roy VELA and Roberto Reyna, Appellees.

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 16, 1982.

Permission to Appeal Denied by Supreme Court as to Roberto Reyna on Feb. 22, 1983.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Henry Williams, Asst. Dist. Atty. Gen., Memphis, for appellant.

Louis P. Chiozza, Jr., Memphis, for Vela.

Gerald F. Easter, Memphis, for Reyna.

## OPINION

TATUM, Judge.

This is an interlocutory appeal by the State, pursuant to Rule 9, T.R.A.P., from a judgment granting a pretrial motion to suppress. The defendants were under indictment for possessing marijuana with intent to sell. The offenses were alleged to have occurred between September 4 and September 6, 1980. Marijuana was seized by police officers pursuant to a search warrant issued September 6, 1980 by a City Judge in Memphis, upon the joint affidavit of Sgt. Dave Jones and Sgt. Frank Hester of the Memphis Police Department. The trial judge held that the facts alleged in the affidavit were insufficient to establish probable cause to believe the defendants were engaged in criminal activity. We quote the joint affidavit:

"The affiant received information from a confidential informant that the above suspects were selling marijuana at 4198 Yellow Birch # 3. This informant provided the names of these suspects, their physical description, their car identification and the fact that they dealt at the Farmer's Market to the affiant. The affiant Jones verified that all of this information was accurate during a two month surveillance of the suspect. This corroborated all the information supplied by the informant and has established the informant's reliability and the accuracy of the information. The affiants set up a surveillance and found that the suspects moved from 4198 Yellow Birch # 3 to 4103 Lafarge # 4. The confidential information came to the affiant Jones with this information which the affiant had already found to be reliable. During the course of the two month surveillance, the affiants observed numerous persons to frequent these premises who were known drug users. Many persons were observed leaving the premises with packages con-

sistent with drug traffic and inconsistent with normal residential purposes. On 9–5–80 2 suspects were observed leaving the premises with a large package. These two suspects were stopped and found to contain approx. one kilogram (2.5 pounds) of marijuana which the suspects purchased inside. This was contained in their vehicle which they used. Sgt. Hester was present when the substance was tested and found to be marijuana."

■ We first consider the portion of the affidavit relating to information given to the affiants by an informant. In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court set out a two-prong test for determining the probative value of information furnished to affiants by unnamed informants. Those decisions require that (1) the affidavit for a search warrant must set forth underlying circumstances which will enable a magistrate to independently judge the validity of the informant's conclusion, and that (2) the affiant-officers must support a claim that their informant was credible or that his information was reliable. This test is required so that the probative value of the informant's report can be assessed.

■ The affidavit in this case concerning the information furnished the affiants by the unnamed informant reflects the same principal rule as that with which the Supreme Court was dealing in *Spinelli.* This affidavit does not contain a sufficient statement of the underlying circumstances indicating how the informer concluded that the defendants were selling marijuana. The affidavit does not relate how the informer received his information, and there is no allegation that the informant personally observed the defendants selling or possessing marijuana. If the informant came by his information indirectly, the affidavit does not give specific facts supplied by his sources.

We also do not believe that the affidavit forms a basis for believing that the infor-

mant was reliable. The names, address, physical description, car identification, and the fact that the defendants traded at Farmer's Market has no relation as to whether they were dealing in marijuana. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), held that details furnished by an unnamed informant might reasonably indicate that the informant had gained his information in a reliable way, even though it was not shown how the informant gained his information. However, we do not find from the affidavit that the general information given by the informant in the present case supports a finding that the information given by the informant was reliable.

Our holding with respect to the information furnished by the informant, is the same as that of the United States Supreme Court in *Spinelli:*

"We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support...."

We now examine the affidavit to determine whether sufficient facts were stated on the personal observations of the affiant-officers to authorize the issuance of the warrant. In doing so, we will bear in mind that in judging probable cause, the issuing magistrate was not confined by niggardly limitations or by restrictions on the use of common sense. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *State v. Melson,* 638 S.W.2d 342 (Tenn.1982); *Post v. State,* 580 S.W.2d 801 (Tenn.Cr.App.1979). In *United States v. Ventresca,* the United States Supreme Court said:

"... affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Techni-

cal requirements of elaborate specificity once exacted under commonlaw pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

In complying with this rule, we must seek the affidavit's meaning as a whole and not by applying technical constructions to each sentence separately.

An examination of the affidavit reflects that the affiant-police officers conducted a two-month surveillance on the premises searched. From this surveillance, the affiants learned that the premises were occupied by the defendants. During the course of the two-months surveillance, the affiants observed numerous persons frequenting the premises who were known drug users. The number of persons observed leaving the premises with packages was consistent with drug traffic and inconsistent with normal residential usage. During the surveillance on September 5, 1980, one day before the warrant was applied for and issued, two persons were observed leaving the premises with a large package. These two people were stopped by police officers and the package was found to contain approximately 2.5 pounds of marijuana. The officers stopped these two persons in their automobile and the package of marijuana was in the automobile. One of the officers was present during a test which disclosed the substance in the package to be marijuana.

Although every sentence in the affidavit does not contain the statement that the affiants made personal observations during the surveillance, we think that the language as a whole infers that it was the affiant-officers who observed the "suspects" leave the premises on 9–5–80. That same language in the affidavit gives the inference that it was the affiant-officers who stopped the two suspects and found that the package contained marijuana. The affidavit stated that the affiants conducted a surveillance. Then, as we construe the affidavit, it proceeded to detail what evidence the surveillance disclosed to the affiants.

The affidavit does not state that the "suspects" told the officers that they purchased the marijuana in the premises, but it does say that many known drug users frequented the premises and that "many persons" (not necessarily drug users) were observed leaving the premises with packages. Two persons leaving the premises with one of these packages were stopped and an examination revealed that the package contained marijuana. Although not determinative, we think that the magistrate was entitled to consider the statements in the affidavit that numerous drug users were observed frequenting the premises. This observation was not the sole basis for probable cause as was the observation referred to in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). That case involved a police officer who stopped the defendant without a search warrant solely because the defendant was seen talking to drug addicts. In this case, the fact that known drug users frequented the premises was an observation made over a two-month period. This was one fact of several that could be considered by the magistrate.

It is true that in the *Spinelli* case, the court observed that the fact that the defendant was a gambler would not give additional weight to allegations that were otherwise insufficient. However, the situation is different here where an unusually large number of drug users frequented premises where controlled substances were thought to be sold. See *Anderson v. State*, 512 S.W.2d 665 (Tenn.Cr.App.1974).

We hold that a reasonable interpretation of the affidavit supports the finding of probable cause. In so holding, we have been mindful that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); *State v. Nolan*, 617 S.W.2d 174 (Tenn.Cr.App.1981). The affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62, 70 (1967).

■ The City Judge who issued the search warrant performed a judicial act which is not subject to review if there are material facts upon which she based her decision. *Owens v. State,* 217 Tenn. 544, 399 S.W.2d 507 (1965); *Post v. State,* 580 S.W.2d 801 (Tenn.Cr.App.1979). The determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Melson, supra.* Although the affidavit was crudely and inartfully drafted, it alleged sufficient facts to enable a neutral and detached magistrate to make the judicial determination that probable cause existed.

The judgment of the trial court granting the motion to suppress is reversed and the case is remanded for trial.

BYERS and SCOTT, JJ., concur.