IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2002

## STATE OF TENNESSEE v. PHILLIP FRANCIS MORALES

**Direct Appeal from the Circuit Court for Blount County**
**No. C-12919, 12920      D. Kelly Thomas, Jr., Judge**

_____

**No. E2001-01768-CCA-R3-CD**
**June 5, 2003**
_____

A Blount County grand jury indicted the defendant on one count of simple possession or casual exchange of Lorazepam, a schedule IV controlled substance, and on one count of possession with intent to sell or deliver an E felony amount of marijuana, a schedule VI controlled substance. After unsuccessfully seeking suppression of the items seized in the search involved in this case, the defendant waived his right to a trial by jury. At the conclusion of a bench trial, the lower court found the defendant guilty as charged. The trial court later sentenced the defendant to concurrent terms of eleven months and twenty-nine days for the simple possession offense and eighteen months for the possession with intent to sell or deliver offense. Though otherwise placed on supervised probation, the trial court ordered the defendant to serve sixteen days of these sentences on eight consecutive weekends.[1] The defendant subsequently filed a new trial motion alleging that the trial court erred in not suppressing the aforementioned evidence and that the proof is insufficient to support the E felony conviction. The trial court denied this motion, and the defendant appeals the denial to this Court raising the same issues. After a review of the record and relevant authorities, we find that the defendant's suppression claim has merit though the sufficiency allegation does not. Because of our finding regarding the suppression matter, we must reverse and remand the defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Mack Garner, District Public Defender, Maryville, Tennessee, for the appellant, Phillip Francis Morales.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; Mike Flynn, District Attorney General; and John Bobo, Assistant District Attorney General, for the appellee, State of Tennessee.

_____

[1] The defendant also received a total fine of two thousand seven hundred fifty dollars.

# OPINION

## Factual Background

On June 30, 1999, authorities associated with or assisting the Fifth Judicial Drug Task Force executed a search warrant at 1747 Forest Hill Road. No dispute exists regarding the fact that the defendant lived there at the time with his girlfriend. During the search the police seized various items including: a total of 198.3 grams of marijuana, sixteen Lorazepam tablets, multiple weapons, hemostats, rolling papers, a set of hand scales, and a box of sandwich bags. After receiving his Miranda warnings, the defendant allegedly stated that for approximately seven hundred dollars he received one-half of a pound of marijuana every two weeks; however, he added that he did not have to pay for the marijuana at the time that it came into his possession. Furthermore, the investigating officer indicated that he had observed another suspect under investigation leave a residence in the middle of a drug deal, go to 1747 Forest Hill Road, stay for a short period of time, then return and complete the drug transaction with a confidential informant. Upon hearing this and additional proof, the trial court found the defendant guilty of A misdemeanor possession of Lorazepam and E felony possession with intent to sell or deliver marijuana.

## Suppression

Through his first issue the defendant asserts that the trial court erred in not suppressing the evidence seized as a result of the search. More specifically, the defendant contends that the search warrant was defective because the supporting affidavit did not sufficiently establish the unnamed confidential informant's reliability. In response, the State avers that "[t]he search warrant issued in this case was not based upon the informant's actions or observations but upon the observations of the officers conducting surveillance."

At the outset we note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

We further observe that an affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. See, e.g., Tenn. Code. Ann. § 40-6-103; Tenn. R. Crim. P. 41(c); State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998); State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." Moon, 841 S.W.2d at 338; see also, e.g., Henning, 975 S.W.2d at 295. To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993). Additionally, "[t]he nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the

evidence." Id. However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999); see also Moon, 841 S.W.2d at 338.

Furthermore, when, as the defendant in the instant case claims, "probable cause for a search is based upon information from a confidential informant, there must be a showing in the affidavit of both (1) the informant's basis of knowledge and (2) his or her veracity." State v. Powell, 53 S.W.3d 258, 262 (Tenn. Crim. App. 2000); see also, e.g., State v. Jacumin, 778 S.W.2d 430, 432, 435-36 (Tenn. 1989) (utilizing the standard set out in Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)).[2] To sufficiently make such showings, the affidavit must include facts permitting "the magistrate to determine [1]] whether the informant had a basis for his information that a certain person had been, was, or would be involved in criminal conduct or that evidence of crime would be found at a certain place" and 2) whether the informant is inherently credible or has reliable "information on the particular occasion." Moon, 841 S.W.2d at 338. Again, the courts have stressed that conclusory statements absent supportive detail will not suffice to establish these requirements. See, e.g., id. at 339. However, "independent police corroboration" may compensate for such deficiencies. See Jacumin, 778 S.W.2d at 436; Moon, 841 S.W.2d at 340.

With these guidelines in mind, we turn to the instant case's affidavit in support of the search warrant. The pertinent portions of this affidavit provide as follows:

Personally appeared before me STEVE BLANKENSHIP of the FIFTH JUDICIAL DRUG TASK FORCE and made oath that he has good ground and believe, [sic] and does believe that KANDY M. LONG is/are in possession of the following described property, namely: MARIJUANA, DRUG PARPHERNALIA, [sic] MONIES FROM ILLEGAL DRUG SALES, AND EVIDENCE OF DOMINION AND CONTROL. [sic] which is to be searched for in accordance with the laws of the State of Tennessee, upon the following described premises, namely: IN THE 911 SYSTEM THE RESIDENCE IS LISTED AS 1747 FOREST HILL ROAD MARYVILLE, TN. . . . and his reasons for such belief are as follows: DURING THE PAST THREE WEEKS AFFIANT HAS CONDUCTED AN INVESTIGATION ON MARIJUANA DISTRIBUTION. DURING THE COURSE OF THIS INVESTIGATION AFFIANT HAS SURVEILLED A SUBJECT KNOWN AS TREVOR GARNER TO THE ABOVE ADDRESS TO PURCHASE QUANTITIES OF MARIJUANA. DURING THE SURVEILLANCE OF MARIJUANA BUYS SUBJECTS, THAT ARE TO REMAIN CONFIDENTIAL, WENT TO TREVOR GARNERS [sic] RESIDENCE AND FRONTED UNDETERMINED AMOUNTS OF MONEY TO TREVOR GARNER FOR THE

---

[2] In Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the United States Supreme Court abandoned the Aguilar-Spinelli two-pronged test for evaluating the sufficiency of an affidavit involving a confidential informant. Gates, 462 U.S. at 238, 103 S. Ct. at 2332. However, the Tennessee Supreme Court subsequently concluded that Aguilar-Spinelli properly applied "provide[s] a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant . . . [and] is more in keeping with the specific requirement of Article 1, Section 7 of the Tennessee Constitution that a search warrant not issue 'without evidence of the fact committed.'" Jacumin, 778 S.W.2d at 436.

PURCHASE OF MARIJUANA. WITHIN THE PAST SEVENTY-TWO HOURS A CONFIDENTIAL SOURCE WAS SURVEILLED TO TREVOR GARNERS [sic] RESIDENCE WHERE THE CONFIDENTIAL [sic] FRONTED AN UNDETERMINED AMOUNT OF MONEY TO TREVOR GARNER FOR THE PURCHASE OF MARIJUANA. AFFIANT AND OTHER AGENTS OF THE DRUG TASK FORCE SURVEILLED TREVOR GARNER LEAVING HIS RESIDENCE AND GOING TO 1747 FOREST HILL ROAD, WHERE HE STAYED FOR A SHORT PERIOD OF TIME AND THEN LEFT THE RESIDENCE AND WAS SURVEILLED BACK TO HIS RESIDENCE. TREVOR GARNER THEN GAVE APPROXIMATELY ONE OUNCE OF MARIJUANA TO THE CONFIDENTIAL SOURCE. DURING THIS SURVEILLANCE TREVOR GARNER DID NOT MAKE ANY STOPS GOING TO 1747 FOREST HILL ROAD OR ANY STOPS RETURNING TO HIS RESIDENCE.

Furthermore, DURING THE COURSE OF THIS INVESTIGATION, AFFIANT HAS LEARNED THAT TREVOR GARNER OBTAINS MARIJUANA FROM AN INDIVIDUAL BY THE NAME OF KANDY WHO RESIDES IN A MOBILE HOME ON FOREST HILL ROAD.

Affiant further states that he believes the information he received from this informant/citizen to be true and correct because: THIS CONFIDENTIAL SOURCE HAS BEEN PROMISED NOTHING IN RETURN. ALL INFORMATION RECEIVED FROM THIS SOURCE HAS ALL PROVEN TO BE TRUE THROUGH PAST DRUG INVESTIGATIONS THROUGH AFFIANTS EXPERIENCE IN NARCOTICS INVESTIGATIONS HE KNOWS THESE ACTIONS TO BE CONSISTENT WITH DRUG SALES.

Additionally, the record reflects the following findings from the trial court prior to denying the motion:

Here, the magistrate was told that the officer has been in a three-week marijuana investigation here in Blount County, I presume. That would be a safe assumption. During the investigation, the officer has watched Trevor Garner go to 1747 Forest Hill Road to buy marijuana. Well, there's nothing further said in the affidavit about how the officer knows, but he says that he saw it. And goes on to say that confidential informants went to Trevor Garner's residence and gave money to Mr. Garner to purchase marijuana. Those two sentences are in there.

Then specifically says that within the last 72 hours he watched a C.I. go to Mr. Garner's, gave Mr. Garner money. Then he watched – the officer watched Mr. Garner leave his residence, go to 1747 Forest Hill Road, stay a short period of time, go back to his own residence – that is, Mr. Garner went back to Mr. Garner's residence, and gave one ounce of marijuana to this confidential informant. And that he didn't stop anywhere going to or from 1747 Forest Hill Road.

I think it's reasonable for the magistrate to determine that what happened in the last 72 hours had happened before and had been observed by the officer as the basis of what he says he saw. And that is, that he had seen Trevor Garner go to 1747 to buy marijuana and that he had seen confidential informants go to Trevor Garner's

house to buy marijuana. So, I think the specifics of what happened in the last 72 hours was illustrative of where he got his – of how he knew what he said in these conclusary [sic] statements in the very beginning.

Now, I don't think that's an impermissible leap for a magistrate to make or for me to make. And I think given the time descriptions set out here, that he – after the buyer arrived, Mr. Garner left, that he went straight to Forest Hill Road, that he stayed a short period of time and returned, and then delivered the marijuana, I think that is probable cause to think that he got marijuana at 1747 Forest Hill Road.

In reviewing this issue, we first address the State's claim that the search warrant "was not based upon the informant's actions or observations but upon the observations of the officers conducting surveillance." We disagree.

The affidavit states that confidential "subjects" went to Trevor Garner's residence to obtain marijuana and fronted money there for that purpose. Furthermore, the affidavit claims that within seventy-two hours of seeking the warrant, one confidential informant had followed this procedure and obtained approximately one ounce of marijuana. It is plain from the document that surveilling officers saw Garner leave the residence, go directly to the defendant's residence, stay a short period of time, and return therefrom without stopping elsewhere. However, the affidavit does not disclose whether the officers actually viewed Garner and the confidential informant when the money and/or the narcotics allegedly changed hands nor is there any indication that this was a controlled buy in which officers electronically monitored the incident. We also note that although the affidavit states Garner gave approximately one ounce of marijuana to the informant, it does not state that the informant turned the marijuana over to the officers or that the officers even observed the marijuana after it was allegedly purchased. Thus, one can only assume the affiant gained this knowledge based strictly upon the informant's telling him about the alleged purchase. Additionally, nothing states whether the exchanges took place outside or inside the home. With this in mind, we note that there is essentially no direct assurance in the officer's affidavit even whether Garner was the only individual at the residence wherein the exchanges are said to have taken place. In short, numerous assumptions are necessary if the magistrate was to rely exclusively on information directly observed by the authorities.

Moreover, the affidavit contains the officer's basis for "believ[ing] the information he received from th[e] informant/citizen." By reasonable inference it appears that the affiant has acknowledged the confidential informant's having provided at least some of the information set out in the affidavit. Unfortunately the language used in the affidavit transforms into a guessing game discernment of what details the informant provided.

We, thus, next address the matter of the confidential informant's veracity. Case law warns against a hyper-technical application of the Aguilar-Spinelli test, and this Court has previously provided that "[t]he requisite volume or detail of information needed to establish the informant's credibility is not particularly great." State v. Lowe, 949 S.W.2d 302, 305 (Tenn. Crim. App. 1996). However, precedent also provides that "the affiant must provide some concrete reason why the magistrate should believe the informant." Id. As above-noted, the affidavit in the instant case states that "[a]ll information received from this source has all proven to be true through past drug

investigations." Though a portion of this sentence indicates the nature of the information previously provided, the remaining portion is certainly conclusory. The statement that the information has proven to be true lacks independent indicia of its validity. For example, we do not know the number of times that the informant has provided reliable information. See State v. Stephen Udzinski, Jr., No. 01C01-9212-CC-00380, 1993 WL 473308, at *4 (Tenn. Crim. App. at Nashville, Nov. 18, 1993). Neither does the affidavit state whether the information previously given has resulted in convictions.[3] See, e.g., Lowe, 949 S.W.2d at 305. Based upon the lack of supportive "concrete reason[s]" such as these, we are forced to conclude that the affidavit fails to support the confidential informant's credibility. See also State v. Darrell Lee Emerson, No. 02C01-9312-CC-00276, 1998 WL 106225, at *6 (Tenn. Crim. App. at Jackson, Mar. 12, 1998).

We are, therefore, left to consider whether observations by the police sufficiently confirm the confidential informant's veracity. In State v. Billy Jerome McMillin, No. 03C01-9110-CR-00322, 1992 WL 227537 (Tenn. Crim. App. at Knoxville, Sept. 18, 1992), this Court faced a somewhat similar situation involving the need for "independent police investigation" corroboration of the Aguilar-Spinelli veracity prong. Id. at *1. The McMillin affidavit contained the following relevant language: "I [the affiant] set up surveillance on the apartment described above and have observed several individuals go to the apartment who are known by me to be drug users. These individuals stay for a short period of time lasting no longer than 15 minutes and leave." Id. Additionally, the affidavit stated that the informant, familiar with the packaging and appearance of marijuana, had seen this substance in the defendant's apartment within forty-eight hours of the officer's seeking the warrant. Id. Specifically noting that the case was a close one, this Court upheld the validity of the warrant. Id. at *2.

As noted above, the affidavit presently before this Court states that Officer Blankenship had been involved in a three-week investigation of marijuana distribution and had observed Garner purportedly going to the defendant's address in order to purchase marijuana. However, the affidavit is not clear regarding the extent to which the three-week investigation focused on Garner, nor does it state the number of times that Garner allegedly went to the defendant's residence to obtain marijuana. The statement "[d]uring the course of this investigation affiant has surveilled a subject known as Trevor Garner to the above address to purchase quantities of marijuana" is quite vague. Moreover, the language contained in the affidavit only specifically details one instance factually indicative of drugs potentially being present in the defendant's residence. This statement relates to Garner's leaving his residence during a drug transaction to go to and from the defendant's residence before completing the sale by allegedly delivering the marijuana. Since these constitute the only observations directly related to the location searched, we believe that more corresponding detail, certainly known or easily recorded at some point by the authorities, was needed in this case. Had the officer detailed that he had observed Garner going immediately to and from the defendant's residence in the middle of several drug transactions, remaining at the defendant's for only a short period of time, and upon his return therefrom delivering marijuana to the confidential subjects, the

---

[3] While we do not assert that proof of prior convictions resulting from information supplied is required to establish an informant's veracity, we note that precedent distinguishes information leading to arrests from information leading to convictions. See Lowe, 949 S.W.2d at 305. In doing so, this Court has observed that arrests are "not necessarily indicative of reliability" while "convictions support[] the conclusion that the information was correct and therefore reliable." Id.

support for the warrant's validity would be considerably stronger.[4] See Billy Jerome McMillin, 1992 WL 227537, at *1-*2; cf. Henning, 975 S.W.2d at 295 (noting evidence of several drug transactions though conclusion that these were drug transactions is not specifically based on duration of visits).

Beyond the lack of proof for the veracity prong of Aguilar-Spinelli, this affidavit also raises concerns regarding the confidential informant's basis of knowledge. Expanding upon the principle that the affidavit must afford the magistrate sufficient facts to determine whether a basis exists for the informant's allegations regarding criminal conduct, this Court has stated that "the affidavit must describe the manner in which the informant gathered the information, or the affidavit must describe the criminal activity of the suspects with detail." State v. Jimmy Clyde Jones, No. 02C01-9703-CC-00120, 1997 WL 777077, at *3 (Tenn. Crim. App. at Jackson, Dec. 18, 1997); see also State v. Vela, 645 S.W.2d 765, 767 (Tenn. Crim. App. 1982). In part because of some of the factual omissions previously cited, it seems that the only detailed support for the affidavit's claim "that Trevor Garner obtains marijuana from an individual by the name of Kandy who resides in a mobile home on Forest Hill Road" is the assertion that on a single occasion Garner left the confidential informant in the middle of a drug transaction, went immediately to the defendant's residence, stayed there briefly, and returned without stopping elsewhere to the confidential informant to complete the sale of approximately one ounce of marijuana. While this behavior may be curious, it does not rise to the level of establishing a basis of knowledge to support a probable cause finding to search not Garner's but the defendant's residence.[5]

In short, we recognize our obligation to engage in "commonsense" rather than "hyper-technical" evaluations of these matters and to afford the magistrate's findings "great deference," Jacumin, 778 S.W.2d at 435-36; State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989); State v. Evelyn C. Bostic, No. M2000-03011-CCA-R3-CD, 2002 WL 369898, at*2 (Tenn. Crim. App. at Nashville, Mar. 8, 2002). However, our review leads us to the conclusion that the affidavit presented in this case contains too many conclusory statements and too few connective concrete facts. For these reasons, we conclude that the record does not support a probable cause finding. Thus, we find that this issue has merit and that the evidence obtained in the search in this case should have been suppressed.

---

[4] We acknowledge that the informant in the instant case, unlike informants in Henning and McMillin, apparently did deliver the sought after drug to the affiant. See Henning, 975 S.W.2d at 295; Billy Jerome McMillin, 1992 WL 227537, at *1. However, in Henning and McMillin the affidavits allege that the informants saw the drug in the place to be searched. See Henning, 975 S.W.2d at 295; Billy Jerome McMillin, 1992 WL 227537, at *1. Such is not the case here.

[5] We do not mean to suggest that a single controlled drug buy can never furnish the basis of probable cause for a search warrant. However, because of the gaps in the affiant's stated observations, i.e. no reference to seeing marijuana or overhearing conversation referring to marijuana during this single alleged purchase, the description of the single purchase in this case lacks the detail sufficient to establish probable cause for a search.

The defendant next argues that the proof is insufficient to support his E felony conviction for possession of marijuana with intent to sell or deliver. While he concedes that the evidence supports a conviction for the lesser-included offense of simple possession, he asserts that the State failed to show that the marijuana involved was intended for other than his personal use.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," case law provides that "a criminal offense may be established exclusively by circumstantial evidence." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

Turning to the language of the statute relevant to the challenged conviction, Tennessee Code Annotated section 39-17-417, in pertinent part, provides that "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Our code also states that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Id. § 39-17-419. Items such as scales, baggies, and weapons in the vicinity of narcotics and/or a defendant have been among those objects found appropriate for consideration in these circumstances. See, e.g., State v. Charles E. Kilpatrick, Jr., No. 01C01-9810-CR-00410, 2000 WL 19762, at *4 (Tenn. Crim. App. at Nashville, Jan. 13, 2000); State v. William Dorris Bucy, II, No. 02C01-9709-CC-00363, 1998 WL 855463, at *8 (Tenn. Crim. App. at Jackson, Dec. 10, 1998); State v. Timothy Rathers, No. 02C01-9701-CR-00392, 1998 WL 605095, at *3 (Tenn. Crim. App. at Jackson, Sept. 14, 1998); State v. Althea Myers, No. 01C01-

---

[6]We address this issue based upon the proof submitted at trial. Obviously the resolution of the above-discussed suppression issue will impact the sufficiency of the proof to support any future conviction in this case.

9510-CR-00355, 1997 WL 424435, at *1 (Tenn. Crim. App. at Nashville, July 30, 1997); State v. Willie J. Houston, No. 02C01-9604-CR-00135, 1997 WL 272446, at *2 (Tenn. Crim. App. at Jackson, May 23, 1997).

As noted above, the defendant concedes that the State has proven that he was knowingly in possession of marijuana; however, he contests the sufficiency of the proof of the element regarding his intention to sell or deliver this substance. A review of the record reveals that the authorities involved found, among other items, the following in the master bedroom of the defendant's residence: a 380 pistol; various knives; hand scales; marijuana packaged in separate sandwich bags; a box of Glad sandwich bags; and a clear plastic bag containing six hundred seventy dollars. Additionally, the investigating officer testified concerning his specialized training and experience in the area of drug enforcement and then offered his opinion that the Arctic Zone cooler containing the hand scales and individually packaged marijuana represented a "normal thing for a dealer." We also observe that this cooler was not only found in the same bedroom with the aforementioned box of Glad sandwich bags, but both were actually located under the bed. Furthermore, we again note that the total of marijuana recovered from the home weighed 198.3 grams. The combination of these facts viewed in the light most favorable to the State sufficiently supports a determination by the trier of fact that the defendant intended to sell or deliver marijuana.[7] This issue, thus, lacks merit.

### Conclusion

As previously stated, we find that the defendant's suppression issue merits relief. Accordingly, we REVERSE the defendant's convictions and REMAND the matters for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE

---

[7] While the record also certainly contains evidence of drug usage which may be relevant to the resolution of this type of claim, such evidence does not preclude the possibility of a valid conviction for the intended sale or delivery of narcotics. See, e.g., State v. Antwain Laman Spears, No. 02C01-9705-CC-00170, 1998 WL 382186, at *6 (Tenn. Crim. App. at Jackson, July 1, 1998).