**STATE of Tennessee, Appellee,**

v.

**Oliver LOWE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 19, 1996.

Permission to Appeal Denied by Supreme Court March 10, 1997.

---

John G. Mitchell, Jr., Murfreesboro, Michael J. Flanagan, Nashville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Glenn Erikson, Assistant Attorney General, Nashville, C. Michael Layne, District Attorney General, Manchester, for Appellee.

## OPINION

WELLES, Judge.

The Defendant was convicted on a jury verdict of possession of a Schedule II substance, methamphetamine, with the intent to sell or deliver, and possession of drug paraphernalia. The basis of this appeal is the trial judge's denial of the Defendant's motion to suppress evidence obtained pursuant to a search warrant. The Defendant argues that this warrant was improperly served, and was issued without probable cause. We find the search warrant was legally sufficient and properly served, and affirm the decision of the trial court.

The facts in the record are summarized as follows. On August 23, 1994, Officer Steven Luttrell of the Manchester Police Department, along with two other officers, traveled to the residence of a third party to investigate that third party's potential involvement in methamphetamine trafficking. This third party lived near the Defendant, and the officers went to this neighborhood with the knowledge that the Defendant might also be in possession of methamphetamine. At some point in the investigation of the third party, the officers decided to go to the Defendant's residence.

Upon arrival at the Defendant's residence, Officer Luttrell noticed four to five people standing outside, including the Defendant.

Luttrell and another officer engaged the Defendant in conversation, and permitted the other individuals to leave the scene. The officers informed the Defendant that they had information that he was in possession of methamphetamine, and asked the Defendant for his consent to search his residence. The Defendant, who was renting the residence, indicated that he was not sure whether he had the authority to authorize a search.

The Defendant, however, did allow the officers to step into the residence. The officers noticed a woman's purse, and asked for his consent to search it; the Defendant consented, but nothing was found. The officers also requested permission to search a cabinet above the sink. Consent was again granted, and they found drug paraphernalia, some containing a powder residue. At this point, Officer Luttrell advised the Defendant of his *Miranda* rights, and asked the Defendant for his permission to search the remainder of the residence. The Defendant stated that he did not believe that he could give consent without the knowledge of the owner. The owner was contacted, and did consent to the search. The Defendant then said that he would not consent to the search without a search warrant.

While the other officers secured the Defendant's residence, Officer Luttrell left to obtain a search warrant. Luttrell completed and signed an affidavit in support of this warrant, and presented it to a magistrate. The affidavit stated:

> That on 8/23/94 I had a conversation with a confidential and reliable informant. Said informant told me that (he/she) had talked to said Oliver Lowe within the prior 48 hours. That Oliver Lowe showed (he/she) a powder substance that informant knew to be methamphetamine. That Oliver Lowe told informant he had more methamphetamine at his camper on Glade Trail at Lakewood Park. Said informant is familiar with methamphetamine with its characteristic [sic] from prior experience with the drug. Said informant knows Oliver Lowe and knows Lowe to sell methamphetamine. Said informant I have known for 10 years. Said informant has give [sic] me informa-

tion on more than 20 different occassions [sic]. On each occassion [sic] said informants [sic] information has proven to be true and accurrate [sic], and has also resulted in numerous felony arrest [sic] and conviction [sic].

The original copy of the affidavit was signed by Officer Luttrell and the magistrate. A search warrant was then issued, and Luttrell took a copy of that warrant, along with a copy of the affidavit, back to the Defendant's residence. Luttrell served the warrant and affidavit on the Defendant, and a complete search was conducted. While both the search warrant served upon the Defendant and the *original* affidavit was complete with all the requisite signatures, the *copy* of the affidavit served upon the Defendant did not contain Luttrell's signature. The search yielded a quantity of methamphetamine, drug paraphernalia, and one Clonazepam pill, a Schedule IV substance. The Defendant was then arrested.

On October 12, 1994, the Defendant was indicted by the Coffee County Grand Jury on one count of possession of methamphetamine, a Schedule II controlled substance; one count of possession, with the intent to sell or deliver, Clonazepam, a Schedule IV controlled substance; and one count of possession of drug paraphernalia. On November 3, 1994, the Defendant filed a motion to suppress evidence seized pursuant to the search warrant. On November 30, 1994, Judge Gerald L. Ewell, Sr. denied the motion to suppress. On June 29, 1995, a jury trial, in front of Judge Ewell, was convened. The jury returned with a verdict finding the Defendant guilty on all charges.

On August 30, 1995, the trial court held a sentencing hearing. At the hearing, the court merged the misdemeanor conviction for the possession with the intent to sell a Schedule IV substance (Clonazepam) with the felony conviction for possession with intent to sell or deliver methamphetamine. The trial court, as imposed by the jury, fined the Defendant $20,000 for the methamphetamine conviction and $2,500 for possession of drug paraphernalia. Further, the Defendant was sentenced to four years for the methamphetamine conviction and eleven-months twenty-nine days for the drug paraphernalia conviction. The sentences were ordered to run consecutively.

On September 1, 1995, the Defendant filed a motion for a new trial. On September 20, 1995, the trial court overruled this motion. The Defendant filed this timely notice of appeal.

## I.

The first issue on appeal is whether, when a law enforcement officer serves a search warrant, together with the affidavit in support of that warrant, the person on whom the warrant is served must receive an exact copy of the original affidavit.

■ As a general rule, a search warrant shall be issued only on the basis of an affidavit, sworn before a magistrate, which establishes the grounds for its issuance. Stated simply, "an affidavit is an indispensable prerequisite to the issuance of a search warrant." *State v. Johnson,* 854 S.W.2d 897, 899 (Tenn.Crim.App.1993); *see* Tenn. Code Ann. § 40-6-103. Upon execution, a signed, exact copy of the warrant "shall be left with the person or persons on whom the warrant is served." Tenn.R.Crim.P. 41(c); *Johnson v. State,* 208 Tenn. 620, 348 S.W.2d 295, 296 (1961). There is no statutory law or rule mandating that a signed, exact copy of the supporting affidavit must also be served with the warrant. *State v. Smith,* 836 S.W.2d 137, 141 (Tenn.Crim.App.1992).

■ Despite the fact that an affidavit is integral to the issuance of a search warrant, in Tennessee, it is not considered an actual part of the warrant, even if it appears on the same printed form as the warrant. *Id.* Rather, the affidavit is considered the evidence upon which the magistrate must determine whether there is probable cause to issue the warrant. *Hampton v. State,* 148 Tenn. 155, 252 S.W. 1007, 1009 (1923). A search warrant may, however, be construed with a supporting affidavit if the affidavit accompanies the warrant and the warrant expressly incorporates the affidavit by reference. *United States v. Blakeney,* 942 F.2d 1001, 1024 (6th Cir.1991). *See also United States v. Towne,* 997 F.2d 537, 547 (9th Cir.

1993). If the warrant does not expressly incorporate the affidavit, the affidavit may still be utilized to cure deficiencies in the warrant itself if a definite reference is made to the affidavit. *See Smith*, 836 S.W.2d at 141; *Hackerman v. State*, 189 Tenn. 130, 223 S.W.2d 194, 196 (1949), *reh'g denied, id.*

The Defendant in the case *sub judice* is attempting to impeach ·the validity of the search warrant because when he was served a copy of both the warrant and the affidavit, he did not receive an exact copy of the original affidavit, as Officer Luttrell's signature was missing. The Defendant argues two points. First, the Defendant claims the warrant is void because it was not issued upon a sworn affidavit, and second, he argues that it is faulty because the Defendant did not receive an exact copy of the original, which possessed the affiant's signature.

■ It is clear from the record that the original affidavit was signed and sworn to by the affiant, so the first prong of the Defendant's argument has no merit. The only way the second prong can have any merit is if the law requires an exact copy of the original affidavit to be served upon the Defendant, or if the affidavit was somehow made part of the warrant itself and must satisfy the requirements set forth in Rule 41(c) of the Tennessee Rules of Criminal Procedure.

Upon examination of both the warrant and the affidavit, there is no reference to the other in either document. The warrant could have been singularly served upon the Defendant, and a legal search conducted, without the Defendant having seen the contents of the affidavit. In sum, the presumption is that an affidavit is not part of a search warrant, even if the two documents are served together, or are both found on the same sheet of paper. If, however, there is explicit reference to the affidavit in the search warrant, the affidavit may be considered part of the warrant.

Because the presumption precludes merging the affidavit and the warrant, and because there is no reference to the affidavit in the warrant, there is no reason to hold the affidavit in the case *sub judice* to the requirements outlined in Rule 41(c). There-fore, the warrant was properly served upon the Defendant.

## II.

The second issue on appeal is whether the affidavit in support of the search warrant contains sufficient evidence of the reliability of the confidential informant to establish probable cause.

■ In Tennessee, there is a distinction between so-called "citizen informants," or by-standers who provide information or tips to the police, and "criminal informants," or those drawn from the "criminal milieu," who provide such information. *State v. Melson*, 638 S.W.2d 342, 354–55 (Tenn.1982). The reliability and source of information provided by a citizen informant used to secure an affidavit is assessed from "all of the circumstances and from the entirety of the affidavit." *Id.* Information provided by an unnamed criminal informant, on the other hand, must be scrutinized in a two-prong examination, referred to as the *Aguilar–Spinelli* reliability/basis of knowledge test. *Aguilar v. Texas*, 378 U.S. 108, 113–14, 84 S.Ct. 1509, 1513–1514, 12 L.Ed.2d 723 (1974); *Spinelli v. United States*, 393 U.S. 410, 415–416, 418–419, 89 S.Ct. 584, 588–589, 590–591, 21 L.Ed.2d 637 (1969); *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn.1993); *State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn.1989); *State v. Moon*, 841 S.W.2d 336, 338 (Tenn.Crim. App.1992).

■ Under *Aguilar/Spinelli*, to establish the requisite probable cause to issue a search warrant when an unnamed criminal informant provides information to the police, certain facts about the information and the informer must be established. Under the first, or "basis of knowledge" prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information or claim regarding criminal conduct. Under the second, or "veracity" prong, facts must be revealed which permit the magistrate to determine the inherent credibility or reliability of the informant. In the case *sub judice*, the Defendant concedes that the "basis of knowledge" prong was met in the affidavit, but claims that the "veracity" requirement was not satisfied.

The Defendant challenges the following passage from Officer Luttrell's affidavit as insufficient to satisfy the veracity requirement:

> Said informant I have known for 10 years. Said informant has give [sic] me information on more than 20 different occassions [sic]. On each occassion [sic] said informants [sic] information has proven to be true and accurate, and has also resulted in numerous felony arrest [sic] and conviction [sic].

In his brief, the Defendant relies extensively on the decision in *State v. Stephen Udzinski*, No. 01C01–9212–CC–00380, 1993 WL 473308, Dickson County (Tenn.Crim. App., Nashville, filed Nov. 18, 1993). In *Udzinski*, this court held that an affidavit which stated that the informant "has provided information to this officer in the past which has all proven to be correct, and has been corroborated by another reliable informant" failed to satisfy the veracity prong because it set forth mere conclusory information which did not provide a basis for the magistrate to make an independent determination regarding the informant's reliability. *Id.* at * 2,3. The Defendant claims that the affidavit in the case *sub judice* is similarly conclusory in nature, and should be voided consistent with the holding in *Udzinski*.

The *Udzinski* case addresses the important requirements for the veracity prong. The *affiant* must supply facts which establish the informant's inherent credibility. Credibility is not established by stating merely that the informant is "credible" or "reliable," but rather by providing specific factual references to the informant's past performances as relates to credibility. *Id.* at *3. Data or information regarding the number of occasions that the informant's previous information has led to convictions supports the conclusion that the informant was correct and therefore reliable. *Id.* at *3. On the other hand, information concerning the number of arrests an informant has precipitated is not necessarily indicative of reliability. *Id.* Further, an affidavit which sets forth the types of evidence or contraband to which the informant's tips have led the authorities is also looked upon favorably. *Id.* at *3. In

short, the affiant must provide some concrete reason why the magistrate should believe the informant.

Perhaps more significantly, the *Udzinski* decision departed in part from *Woods v. State*, 552 S.W.2d 782 (Tenn.Crim.App.), *cert. denied, id.* (Tenn.1977), a case which permitted conclusory information regarding an informant's credibility to serve as the basis for probable cause in the issuance of a search warrant. The *Woods* decision stated that "it is not necessary that the affidavit detail the reliable information given by the informant in the past." *Woods*, 552 S.W.2d at 785. In response to the holding in *Woods*, the *Udzinski* court held: "Where, as here, the affidavit is conclusory as to the informant's prior information and does not include the nature of that information, we believe some detail is not only necessary but required." *Udzinski*, at *5.

The requisite volume or detail of information needed to establish the informant's credibility is not particularly great. For example, in *State v. Johnson*, 854 S.W.2d 897 (Tenn.Crim.App.1993), the court held that an affiant may establish the reliability of an informant by making reference in the affidavit to three prior, successful investigations in which the informant was involved. *Id.* at 899. This relatively low threshold, combined with the holding in *Udzinski* that "some detail . . . is required" indicate that as long as the magistrate has specific corroborating information such as that the information has resulted in convictions, with which to assess the credibility of the informant, the veracity prong can be met. *Udzinski*, at *5.

The Defendant in the case *sub judice* argues that the statement that the informant in question has provided Officer Luttrell with information on more than twenty different occasions which has on each occasion proven true and accurate, and has resulted in numerous felony arrests and convictions is conclusory in nature. In light of the holdings in *Udzinski* and *Johnson*, it is difficult to find the merit in that contention. If Luttrell had merely stated that the informant's past information has proven true and accurate, then the affidavit would have been

conclusory as outlined in *Udzinski*. There would have been no basis for the magistrate to judge the informant's track record. Additionally, *Johnson* held that an affidavit which stated that an informant has provided information which has led to *three* successful investigations was deemed sufficient. In the case *sub judice*, Officer Luttrell stated that the informant has participated in more than *twenty* investigations, most of which may be considered "successful."

It is the issuing magistrate who has the responsibility to synthesize this type of raw information and determine whether the informant has been shown to be sufficiently reliable or to demand more information. It is clear, however, that in the case *sub judice* the magistrate had factually based information upon which to base the decision. This is what the law requires. Therefore, the Defendant's argument that this affidavit was simply conclusory in nature is not well-taken.

The veracity prong was met, and thus there was sufficient probable cause for the issuance of the search warrant.

In conclusion, because the Defendant was not entitled by law to a signed and exact duplicate copy of the affidavit, and because there was sufficient probable cause for the issuance of a search warrant, the trial judge did not err when he denied the Defendant's motion to suppress evidence seized pursuant to the search warrant. The decision of the trial court is affirmed.

BARKER and SMITH, JJ., concur.