# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

**June 1997 Session**



**FILED**

**October 2, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | **No. 03C01-9701-CC-00018** |
| | ) | |
| vs. | ) | **Bradley County** |
| | ) | |
| **BUDDY HUGH BREWER and** | ) | **Hon. Mayo L. Mashburn, Judge** |
| **TAMMY BREWER,** | ) | |
| | ) | (Certified Question--Search and |
| Appellants. | ) | Seizure) |

**FOR THE APPELLANTS:**

KENNETH L. MILLER
Attorney for Appellants
30 Second Street
P.O. Box 191
Cleveland, Tennessee 37364

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY R. COPOUS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

JERRY N. ESTES
District Attorney General

CARL PETTY
Asst. District Attomey General
P.O. Box 1351
Cleveland, TN 37364-1351

OPINION FILED: _____

**REVERSED, VACATED and REMANDED**

**CURWOOD WITT**
**JUDGE**

**OPINION**

The defendants, Buddy Hugh Brewer[1] and his wife, Tammy Brewer, appeal certified questions of law from the Bradley County Criminal Court pursuant to Rule 37(b) (2) (I) of the Tennessee Rules of Criminal Procedure.[2] In cases which have been consolidated for hearing on appeal, the defendants challenge the issuance and execution of a warrant to search their home, and Tammy Brewer also challenges the legality of an arrest and a search of her person incidental to that arrest. Subject to the reservation of these dispositive certified questions, Buddy Brewer pleaded guilty to and received convictions for the following offenses: (1) simple possession of Schedule II controlled substances, $750.00 fine, eleven months, twenty-nine days in the county jail, to be served on probation; (2) possession of marijuana for sale, Class E felony, Range I, $2,000.00 fine, one year sentence to be served in split confinement of 90 days incarceration and the remainder of the sentence to be served on probation. Subject to the same reservation, Tammy Brewer pleaded guilty to simple possession of marijuana and received a fine of $250.00 and a sentence of eleven months, twenty-nine days, to be served on probation.

As identified in the trial court's "Order Certifying Reserved Question on Appeal," the dispositive questions of law brought to this court are summarized as follows:

(1) Whether probable cause existed for the issuance of the search warrant for the defendants' home;

(2) Whether the search warrant was overly broad and illegal;

---

[1]Although some documents in the record refer to this defendant as "Buddy Brewer" it is the policy of this court to use the name as it appears on the indictment. On the indictment, this defendant is identified as "Buddy Hugh Brewer."

[2]The appellants' procedure in certifying the question of law satisfies the requirements established by our supreme court in State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), and the state has not asserted any noncompliance.

2

(3) Whether the search warrant was illegally executed; and

(4) Whether the search of the person of Tammy Brewer was unlawful.

After a thorough review of this case, we hold that, even though the defendants have failed to show that the search warrant was improperly issued, the search must be invalidated because of the faulty execution of the warrant. Because the basis of the arrest of Tammy Brewer and the resulting search of her person was the discovery of contraband made by the officers executing the warrant, the search of Tammy Brewer is likewise invalid. As a result, the order of the trial court overruling the motion to suppress is reversed, and the judgments of conviction based upon the guilty pleas are vacated and set aside.

On October 9, 1995, an affiant identified as "Det. Roxanne Blackwell" executed an affidavit for a search warrant before a Bradley County General Sessions Court Judge. In the affidavit, she alleged that Buddy Brewer possessed controlled substances described as methamphetamine, which controlled substances were located in "_____ County, Tennessee" at a house to which travel directions were provided. The affidavit further states that a confidential informant went to the described location and "saw the drugs stored at that location," that this informant "has given officers of this department information in the past that has led to arrest and convictions," and that the informant saw "the drugs at this location within the last three (3) days." On the same date, the General Sessions Court Judge, the magistrate to whom the affiant applied for a search warrant, issued a warrant commanding the officers to proceed to the described location "in Bradley County, Tennessee" to search for "an off-white powder believed to be methamphetamine/cocaine."

Testimony at the suppression hearing revealed that "Det. Roxanne Blackwell" was an officer with the Bradley County Sheriff's Department. She testified that she procured the warrant and that she and a second officer carried out the search of the defendants' home where some contraband was found. The

3

defendants were not at home when the search was carried out, but they arrived before the officers departed. Det. Blackwell testified that when the defendants drove up to the house, she arrested Tammy Brewer for the possession of the contraband found in the house and discovered marijuana on her person in a search incidental to the arrest. Det. Blackwell further testified that, upon issuance of the search warrant to her, she kept all three copies, "[t]he judge's, ours, and the defendants'." She testified that the usual procedure was for the executing officer to take all three copies of the warrants and, after execution, to take them to the office in order to add the listing of evidence seized. She testified this was done in this case, that no copy of the warrant was given to either of the Brewers prior to the post-search paperwork, and that she did not know when or from whom the Brewers received a copy of the warrant. Tammy Brewer testified that she received the copy when her personal effects were returned to her upon her release from jail, and that, prior to her showing this copy to Buddy Brewer, he had not been presented with a copy of the warrant.

The trial court overruled the defendants' motions to suppress the evidence seized from the defendants' house and from the person of Tammy Brewer.

On appellate review, a trial court's denial of a motion to suppress will be upheld unless the evidence preponderates against the lower court's findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

A search warrant is "an order in writing in the name of the state, signed by a magistrate, directed to the sheriff, any constable, or any peace officer of the county, commanding him to search for personal property, and bring it before the magistrate." Tenn. Code Ann. § 40-6-101 (1990).

Rule 41(c) of the Tennessee Rules of Criminal Procedure provides in

4

pertinent part:

> The magistrate shall prepare an original and two exact copies of the search warrant, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with the person or persons on whom the search warrant is served. The magistrate shall endorse upon the search warrant the hour, date, and name of the officer to whom the warrant was delivered for execution; and the exact copy of the search warrant and the endorsement thereon shall be admissible evidence. Failure of the magistrate to make said original and two copies of the search warrant or failure to endorse thereon the date and time of issuance and the name of the officer to whom issued, or the failure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said warrant an illegal search and any seizure thereunder an illegal seizure.

Tenn. R. Crim. P. 41(c).

On a constitutional level, the Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures and the issuance of warrants except upon probable cause, "supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Tennessee Constitution also forbids unreasonable searches and seizures, and departing from the language of the federal provision, it proscribes "general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence ...." Tenn. Const. art. I, § 7. Of course, the federal provision is applicable to state action. Mapp v. Ohio, 364 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

I. Probable Cause and the Issuance and Content of the Search Warrant.

The defendants have attacked the sufficiency of the affidavit supporting the search warrant on the grounds that it does not affirm the veracity of

5

the confidential informant as required by State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). Furthermore, they allege the affidavit failed to establish probable cause when some portions of the affidavit referred simply to "drugs," as opposed to illicit drugs, and when the affiant failed to identify the county in Tennessee in which the suspected property is located. They also allege the language of the warrant is overly broad in describing the physical area to be searched and the items to be seized. Specifically, they contend there was no basis for the warrant authorizing the search of "all outbuildings and vehicles," nor was the magistrate authorized to command a search for "an off-white powder believed to be cocaine." These issues require a reference to and an examination of the affidavit and search warrant.

A facsimile of an affidavit and a search warrant appears in the technical record that was prepared and certified by the trial court clerk. Also, a facsimile of these items was appended to the defendant's brief, and the brief identified the facsimile as a copy of the affidavit and warrant now under attack. While appending a copy of the affidavit and warrant to the brief is helpful to this court if they were otherwise properly set forth in the record, we find that the affidavit and search warrant at issue were not properly before the court. They were not offered into evidence at the suppression hearing, and no copies of the affidavit and warrant that appear in the technical record have been certified or authenticated by the trial judge.

The same situation was presented to this court in State v. Cooper, 736 S.W.2d 125 (Tenn. Crim. App. 1987). In Cooper, the search warrant that had been attacked in a motion to suppress appeared in the technical record but not as an exhibit in the transcript of the evidence. We held in Cooper that we were precluded from considering the issue and made the following observation:

> Before an exhibit may be considered by the court, it must have been (a) received into evidence, (b) marked by the trial judge, clerk or court reporter as having been received into evidence as an exhibit, (c) authenticated by the trial judge, and (d) included in the transcript of the evidence transmitted to this court.

Cooper, 736 S.W.2d at 131. In the case now before us, the trial court has not authenticated any copy of an affidavit and warrant as a copy of the affidavit and warrant under attack. The "technical record" is certified by the trial court clerk, but it is not authenticated by the trial judge. Compare Tenn. R. App. P. 24(a)(1) (certification by trial court clerk of all papers filed in trial court, with exceptions) with Tenn. R. App. P. 24(f) (approval of transcripts and exhibits by trial judge). In this situation, the affidavit and warrant are not in evidence, and "[w]e must conclusively presume the ruling of the trial court was correct," at least as to those issues which cannot be resolved without reviewing the affidavit and warrant. Cooper, 736 S.W.2d at 131. See Chico v. State, 217 Tenn. 19, 25-26, 394 S.W.2d 648, 651 (1965); Fine v. State, 183 Tenn. 117, 119, 191 S.W.2d 173, 174 (1945).

II. The Execution of the Warrant.

Because the dispositive issue concerning the execution of the warrant does not require a review of the contents of the affidavit or the warrant, we examine the issue of execution even though there is no copy of the warrant in evidence. The fact that the warrant exists is in evidence via testimony adduced at the suppression hearing.

We hold that the failure of the magistrate to retain a copy of the search warrant deprives the warrant of any efficacy. As pointed out above, Rule 41 requires the magistrate to "prepare an original and two exact copies of the search warrant, one of which shall be kept by the magistrate as a part of his or her official records...." Tenn. R. Crim. P. 41(c). It is undisputed that the executing officer took the original and both copies with her after the warrant was issued.[3]

_____

[3]It is not clear if the officer also took the affidavit with her without leaving a copy with the magistrate. Under Tennessee law, the affidavit is a document separate from the warrant. State v. Oliver Lowe, No. 01C01-9601-CC-00010 (Tenn. Crim. App., Nashville, Sept. 19, 1996), perm. app. denied (Tenn. 1997).

This court previously has reviewed anomalies concerning the issuing magistrate's retention of a copy of the search warrant. See State v. Gambrel, 783 S.W.2d 191 (Tenn. Crim. App. 1989); State v. Henry, 680 S.W.2d 476 (Tenn. Crim. App. 1984). In Gambrel, the magistrate retained a physical copy of the warrant, but due to the weakness of the carbon impression, the wording that was written into the blanks in the form's printed language on the magistrate's copy was "barely legible." This court observed in Gambrel that the "purpose of having the magistrate retain a copy ... is to insure the purity of the search process." 783 S.W.2d at 192. We pointed out that the rule protects against any post-issuance alteration of the original warrant and "gives the judge control to insure that the warrant is executed and returned to the magistrate in a timely manner ...." Id. However, we noted in Gambrel that the written portion of the warrant was merely dim, not absent, and we held that the copy left with the magistrate was an "exact copy" that complied with Rule 41(c). Id.

In Henry, the search warrant copy that had been retained by the magistrate was misplaced and could not be produced at the suppression hearing. This court affirmed the trial court's determination the search was valid despite the absence of the magistrate's copy. We pointed out that the magistrate initially retained a copy of the warrant. "Only sometime later did the magistrate's copy become lost." 680 S.W.2d at 478. In Henry, the record disclosed no "changes or deletions" or "improprieties" with the warrant, and moreover, the defendant failed to show that he was prejudiced in any manner by the loss of the once-existing copy. Id.

The case before us, however, is distinguishable from Gambrel and Henry in two important respects. The first distinction in the defendants' cases concerns a separate anomaly in the warrant's execution. Rule 41(c), in addition to requiring that the magistrate retain a copy, requires also that the other copy "shall be left with the person or persons on whom the search warrant is served."

8

Furthermore, the rule provides as follows:

> [F]ailure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.

Tenn. R. Crim. P. 41(c). The officers delivered no copies to either of the defendants when they arrived at their residence after the completion of the search. The testimony reflects that the officer prepared the inventory of the seized items before attempting to deliver a copy of the warrant to the defendants. Tammy Brewer received a copy on the following day upon her release from custody, and she testified that Buddy Brewer received no copy of the warrant. We need not determine, and we decline to determine, whether the delay of a post-search service of the copy on the defendants, who were absent prior to and during the search, was by itself a departure from the requirement of Rule 41(c) that a copy be left with the defendants. However, the overnight delay in providing a copy of the warrant to the defendants exacerbates the error made when no copy was retained by the magistrate. From the time the warrant was issued until after the search was completed, law enforcement officers retained absolute control over the original and all existing copies of the warrant. In this context, there is the opportunity to repair errors or deficiencies which may have only become apparent during or after the search. In this situation, "the purity of the search process" is substantially compromised.

The second distinction between this case and the Gambrel and Henry situations is perhaps more important. In both Gambrel and Henry the issuing magistrates initially retained copies of the warrants in compliance with Rule 41(c). On the other hand, the magistrate never retained a copy after issuance, and the executing officer went into the field in possession and control of the original and all existing copies of the warrant. This practice, standing alone, impermissibly militates against the purity of the search process.

We make this observation about the method of execution used in this

9

case because of the damage to the integrity of the search warrant process caused by the possibility, if not the appearance, of official misconduct. We stress that no one has accused the executing officer of tampering with the warrant, and we do not imply that any such conduct occurred in this case. Moreover, Rule 41(c) places the duty upon the magistrate to prepare and keep an exact copy of the warrant "as a part of his or her official records," and it is not the officer's duty to see that this magisterial act is performed. Nevertheless, when this basic, common sense requirement of the rule is not followed, there is damage to the process, ipso facto and ab initio.

It remains for us to determine the result of this departure from Rule 41(c). The defendants request that the fruits of the searches be suppressed, but in Henry this court noted that, with respect to the magistrate not retaining a copy of the issued warrant, Rule 41(c) contains "no internal exclusionary clause requiring the search to be invalidated where the magistrate fails to maintain his retained copy in his possession throughout the case." Henry, 680 S.W.2d at 478. This dictum refers to the final sentence of Rule 41(c) which sets forth the "mandatory" language that makes a search and/or seizure "illegal" when the magistrate fails "to make [an] original and two copies of the search warrant," fails to endorse thereon the "date and time of issuance and the name of the officer to whom issued," or when the officer fails "where possible to leave a copy with the person or persons on whom the search warrant is being served ...." See Tenn. R. Crim. App. 41(c). Failure of the magistrate to retain a copy is not one of the situations in which the rule dictates invalidation of the search.

On the other hand, one of the express mandatory directives of the rule is that the magistrate make an original and two copies of the warrant. The rule is clear that the purpose of one of these copies is that it remain in the possession of the magistrate "as a part of his or her official records." Thus, the object of the making of a magistrate's copy is that the magistrate have and keep the copy after

10

issuance of the warrant.  For this reason, we conclude that the magistrate's retention of a copy of the search warrant is implicit in the mandatory provisions of Rule 41(c), the provisions under which a failure to comply "shall make any search conducted ... an illegal search and any seizure thereunder an illegal seizure."[4] Tenn. R. Crim. P. 41(c).  The appellate courts of this state have previously held that a violation of these provisions leads to suppression of the illegally seized evidence. Johnson v. State, 208 Tenn. 620, 348 S.W.2d 295 (Tenn. 1961); Talley v. State, 208 Tenn. 275, 345 S.W.2d 867 (Tenn. 1961); State v. Steele, 894 S.W.2d 318 (Tenn. Crim. App. 1994); State v. Grapel Simpson, et al, No. 02C01-9508-CC-00240 (Tenn. Crim. App., Jackson, Sept. 30, 1996); State v. Jerry Neal Lindsey, No. 3 (Tenn. Crim. App., Jackson, Nov. 20, 1985).

---

[4]        In arriving at this conclusion, we are mindful of the predecessor provision of Rule 41(c).  This provision was set forth in Tennessee Code Annotated section 40-518 (Supp. 1974) (repealed 1979).  The final sentence in the statute was different from the final sentence appearing in Rule 41(c).  In the statute, the sentence read: "Failure to comply with this section shall make any search conducted under said warrant an illegal search and seizure" (emphasis added).  This section included the requirement that the magistrate keep a copy of the warrant "as a part of his official records."  Tenn. Code Ann. § 40-518 (Supp. 1974) (repealed 1979).  (The rules of Criminal Procedure were approved by the General Assembly pursuant to Tennessee Code Annotated section 16-3-404.  They became effective on July 13, 1978, after being approved by the Governor on April 14, 1978.)

        We are also mindful that the deletion of the requirement that the magistrate retain a copy of the warrant from the mandatory language when the legislature adopted the Rules in 1978 and then repealed Code Section 40-518 in 1979 could be construed as a deliberate act of redaction.  One applicable rule of statutory construction is that "the mention of one subject in a statute means the exclusion of other subjects that are not mentioned."  State v. Harkins, 811 S.W. 2d 1, 3 (Tenn. 1986).  Furthermore, courts could construe statutes "so that no part will be inoperative, superfluous, void, or insignificant ... and further to give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent."  Tidwell v. Collins, 522 S.W.2d 674, 767-77 (Tenn. 1975). We do not presume that the legislature "intended to place superfluous terms in the statute; and all language in a statute is presumed to have some meaning." State v. Vestal, 611 S.W.2d 819, 821 (Tenn. 1981).  Also, a statute should be construed "so that its component parts are consistent and reasonable."  Marsh v. Henderson, 221 Tenn. 42, 48, 424 S.W.2d 193, 196 (Tenn. 1968).

        Applying these aids to the construction of Rule 41(c), the mandatory language must include implicitly the requirement of leaving a warrant copy with the magistrate.  Otherwise, the requirement of making the magistrate's copy is superfluous.  We construe the terms of Rule 41(c) together, and in order to give reasonable effect and meaning to every word, we must conclude that the requirement of making a copy for the magistrate entails leaving that copy with the magistrate.

Consequently, we hold that the search of the Brewer residence was invalid, and the fruits of that search should have been suppressed. Because the probable cause that was used to justify the arrest of Tammy Brewer is based upon the discoveries made pursuant to the search warrant, the arrest is unjustified, and therefore, the warrantless search of her person incidental to that arrest is itself invalid. The fruits of that search also should have been suppressed. It is unclear from the record whether Buddy Brewer's marijuana conviction is based upon contraband that was discovered in the residence or whether it is based upon a search of his person, but it is apparent in the record that his arrest and any subsequent search of his person resulted from the discoveries made in the residence. Therefore, the same rationale as applies to Tammy Brewer proscribes the use of evidence obtained through any search of Buddy Brewer's person.

Therefore, the action of the trial court in overruling the defendants' motion to suppress is reversed, and the pleas of guilt are vacated and set aside. The cases are remanded, and in view of our treatment of the dispositive issues, the cases shall be dismissed.

_____
CURWOOD WITT, JUDGE


CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JOSEPH M. TIPTON, JUDGE

12