IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

September 6, 2017 Session

## STATE OF TENNESSEE v. BARRY LEON FERGUSON

**Appeal from the Circuit Court for Dyer County**
**No. 15-CR-77     R. Lee Moore, Jr., Judge**

_____

### No. W2017-00113-CCA-R3-CD
_____

The Appellant, Barry Leon Ferguson, pled guilty in the Dyer County Circuit Court to possession of cocaine with intent to sell or deliver, possession of methamphetamine with intent to sell or deliver, possession of oxycodone with intent to sell or deliver, and possession of marijuana with intent to sell or deliver and reserved a certified question of law concerning the sufficiency of the affidavit underlying the search warrant issued in this case. Based upon the oral arguments, the record, and the parties' briefs, we affirm the trial court's denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, J., joined.

Martin L. Howie, Dyersburg, Tennessee, for the appellant, Barry Leon Ferguson.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; C. Phillip Bivens, District Attorney General; and Charles Dyer and Karen W. Burns, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

This case relates to a search of the Appellant's home on November 3, 2014. On October 30, 2014, Investigator Stoney Hughes of the Dyer County Sheriff's Office submitted an affidavit in which he listed the following as the factual basis supporting probable cause for issuance of a search warrant for the residence:

1. That the sale of illegal drugs generates large amounts of cash. Drug traffickers typically utilize this to purchase assets of all types including, but not limited to, vehicles, jewelry and real estate.

. . . .

2. The Confidential Source, hereafter referred to as CS, has contacted the affiant and Lt. Ken Simpson concerning suspect Barry Ferguson "AKA Slow" selling cocaine, and cocaine base from his residence at 743 Newbern Roellen Rd.. A Criminal History query reveals that Barry Ferguson has a conviction in Federal Court for sale of cocaine on 06-24-96[.]

3. A vehicle registration query revealed that Barry Ferguson has a black 1998 Pontiac currently registered to him at the address of 743 Newbern Roellen Rd. Dyersburg, TN with an expiration date of 03/31/15.

4. Within the past 72 hours, the CS has met with Lt. Ken Simpson, and the affiant for the purpose of conducting a controlled buy at Barry Ferguson's address at 743 Newbern Roellen Rd. from Barry Ferguson. The CS [h]ad made an agreement to purchase cocaine base. Lt. Simpson and the affiant searched the CS prior to the purchase and transported the CS to Newbern Roellen Rd. The CS went to the front door of Barry Ferguson's Residence, where Mr. Ferguson came to the door from inside to make the exchange. The CS returned with a white rock like substance that field tested positive for cocaine.

5. Residence to Wit: 743 Newbern Roellen Rd, Dyersburg, Tennessee, 38024. The involved residence is a single story, single family dwelling, with blue siding, a full length front porch with brown trim and support posts at the corners, a white metal roof, sitting on the west side Of Newbern Roellen Rd., facing east, with a black mailbox numbered 743 located on the road side of the property, and being the residence of Barry Leon Ferguson[.]

6. Your Affiant requests a search warrant for the residence of 743 Newbern Roellen Rd, Dyersburg, Tennessee, 38024, and all persons, vehicles and curtilage located at this residence for firearms, cocaine, cocaine base, clandestine cocaine base manufacturing equipment,

> drug paraphernalia, U.S. Currency, receipts, books, ledgers, notes, computerized and hand written records and all other material evidence of violations of T.C.A. 39-17-417, T.C.A. 39-17-1307, T.C.A. 39-17-1308 and 39-17-1324.

Based on the information contained in the affidavit, Chancellor Tony Childress granted Investigator Hughes's request for a search warrant. During the search, police officers found cocaine, methamphetamine, oxycodone, and marijuana.

At the Appellant's preliminary hearing, Investigator Hughes testified that prior to obtaining the search warrant, he and Lieutenant Simpson met with the CS and verified that the Appellant lived at the home on Newbern Roellen Road. The Appellant was not present when the police arrived to execute the warrant, so the officers "breach[ed]" the door. During the search, they found four white rock-like objects believed to be crack cocaine, four individually-wrapped plastic bags containing a clear crystal-like substance believed to be methamphetamine, two prescription pill bottles containing oxycodone, and seventeen bags of marijuana that appeared to have been packaged for resell. They also found drug paraphernalia, plastic sandwich bags, and digital scales. Investigator Hughes said they found most of the evidence in the kitchen area.

On cross-examination, Investigator Hughes testified that the CS contacted him and told him that "Barry Ferguson sells crack cocaine and just cocaine." Defense counsel asked how the CS knew cocaine was being sold from the Appellant's residence, and Investigator Hughes answered, "I believe the source had purchased from Mr. Ferguson before." Investigator Hughes had never used the CS as an informant prior to this case and did not know if the CS was reliable, so he set up a controlled drug-buy between the CS and the Appellant. He acknowledged that the CS was a drug user and was not a citizen informant.

Investigator Hughes testified that on the day of the drug-buy, he transported the CS to Newbern Roellen Road and "dropped off" the CS south, but "within a mile" of, the Appellant's home. Investigator Hughes was in a vehicle north of the residence and was "pulled over" onto a "field road." He said the CS was not being monitored with video- or audio-recording equipment because "we maintained visual surveillance all the way to the residence and from the residence." However, Investigator Hughes lost visual contact with the CS when the CS "entered the front porch." The CS had twenty dollars for the buy, and the CS bought "one rock" of crack cocaine from the Appellant.

At the conclusion of the hearing, the Dyer County General Sessions Court bound over five drug-related charges to the grand jury. In June 2015, the Dyer County Grand Jury indicted the Appellant for possession of one-half gram or more of cocaine with

- 3 -

intent to sell or deliver, a Class B felony; possession of one-half gram or more of methamphetamine with intent to sell or deliver, a Class B felony; possession of oxycodone with intent to sell or deliver, a Class C felony; and possession or more than one-half ounce of marijuana with intent to sell or deliver, a Class E felony.

The Appellant filed a motion to suppress the evidence obtained during the search on the basis that Investigator Hughes's affidavit failed to establish probable cause for the search warrant. In support of his motion, the Appellant noted that Investigator Hughes failed to state in the affidavit that the CS had provided information about other drug transactions previously or had any knowledge of drug trafficking. The Appellant further noted that Investigator Hughes testified at the preliminary hearing that he did not know if the CS was reliable. The Appellant argued that although Investigator Hughes arranged a controlled drug-buy in order to determine the CS's reliability, Investigator Hughes testified at the preliminary hearing that he dropped off the CS within a mile south of the Appellant's house and pulled into a field road north of the residence to observe the buy. The Appellant then stated, "Proof introduced at the suppression hearing in this matter will confirm that within a mile south of Defendant's residence on Newbern-Roellen Road, and between the intersection of Newbern-Roellen Road and State Highway 104 and Defendant's residence, there are twenty-three (23) residences and four (4) hills with deep troughs between the crests of the hills."

At the suppression hearing, Investigator Hughes testified for the State that he had never met the CS or obtained information from the CS prior to this case and, therefore, set up the controlled drug-buy between the CS and the Appellant. Before the buy, Investigator Hughes searched the CS for illegal substances and gave the CS money to purchase cocaine. Investigator Hughes and Lieutenant Simpson "dropped the confidential source off just - just before Mr. Ferguson's residence and followed the source by vehicle [up to the residence]." The officers then drove past the Appellant's house and parked on a field road where they could maintain visual surveillance of the CS. The Appellant's front porch was covered by a dark screen, so the officers lost visual contact of the CS when the CS entered the front porch area. The CS exited the Appellant's residence two to five minutes later, and the officers maintained visual surveillance of the CS from the time the CS left the residence until the officers made contact with the CS "just down the road."

Investigator Hughes testified that he and Lieutenant Simpson picked up the CS and that the CS gave them a small package containing a rock-like substance. The substance field-tested positive for cocaine. Investigator Hughes searched the CS but did not find any drugs or money on the CS's person. He submitted an affidavit in support of a search warrant to Chancellor Childress, and Chancellor Childress signed the warrant.

- 4 -

On cross-examination, Investigator Hughes testified that he had never spoken with the CS and that he did not know whether the CS had given information to law enforcement prior to this case. Defense counsel asked if Investigator Hughes considered the CS unreliable prior to this drug buy, and he answered, "I would not say unreliable, just I could not confirm the source's reliability at that point." To confirm the CS's reliability, Investigator Hughes arranged for the CS to buy drugs from the Appellant. He said he usually did not use audio- or video-recording equipment during such buys.

Investigator Hughes testified that on the day of the drug-buy, he dropped off the CS on Newbern Roellen Road and that the CS was south of the Appellant's residence but north of the intersection with Highway 104. He acknowledged testifying at the preliminary hearing that he dropped off the CS "within a mile" of the Appellant's house. He said that when the CS arrived at the Appellant's home, the officers drove past the house and parked "just north." The officers maintained visual surveillance of the CS until the CS entered the front porch area. Investigator Hughes estimated that he picked up the CS fifteen to twenty minutes after he dropped off the CS and said that the CS did not indicate drugs or other people were in the home.

Milly Worley testified for the Appellant that she and defense counsel shared office space and that she sometimes did investigative work for counsel. Relevant to this case, Worley "shot" video of Newbern Roellen Road. She described the video as "down from 104 turning onto Newbern-RoEllen and down to what, I believe, to be Barry - Barry's house and just past that a little bit and then back." Defense counsel played the video for the trial court and introduced the video into evidence. Defense counsel questioned Worley during the video, and she noted that a driver "topped" four hills between Highway 104 and the Appellant's home. She described the area as "very up and down" and said she counted twenty-three houses between the highway and the Appellant's house. She said that the area north of the Appellant's residence was "very flat" but that "there were big evergreen trees, some type of cedar tree, and you could not see [the house] until you were right there on it."

On rebuttal for the State, Investigator Hughes maintained that he kept visual surveillance of the CS "until the source entered the front porch area." On cross-examination, defense counsel asked, "How could you see over those hills?" Investigator Hughes said he and Lieutenant Simpson kept visual surveillance of the CS from the drop-off location to the Appellant's house by following the CS in their car. After the CS entered the Appellant's house, the officers "pulled in and we could still maintain visual surveillance of the front of the residence." Investigator Hughes was adamant that he could see the Appellant's front porch from where the officers were parked on the field road.

The trial court ruled that "[h]ad it not been for the controlled buy," the court would have agreed with the Appellant that the affidavit failed to establish probable cause because the affidavit did not establish "the two prongs." However, the court concluded that the controlled drug-buy "corrects that situation" and "does create the probable cause necessary." The trial court said it understood the Appellant's claim that the officers could not maintain visual surveillance but accredited Investigator Hughes's testimony that the officers followed the CS until the CS went onto the porch, that the officers drove past the Appellant's house, and that they maintained visual surveillance of the home until the CS came outside. The court concluded that "[w]ith the other information from the controlled buy of searching the informant both before and afterwards and . . . the rock like substance that field tested positive for cocaine," the affidavit established probable cause for issuance of the search warrant. Accordingly, the court denied the Appellant's motion to suppress.

The Appellant pled nolo contendere to the four indicted offenses in exchange for an effective ten-year sentence.[1] Pursuant to the plea agreement, the Appellant reserved the following certified question of law: "whether probable cause existed for the issuance of the search warrant ultimately leading to Defendant's arrest; specifically, whether there was sufficient police corroboration to cure the defect of the unreliability of the confidential source." On appeal, the Appellant contends that the affidavit failed to establish the "basis of knowledge" and "veracity" prongs of the Aguillar-Spinelli test and that the controlled drug-buy failed to cure the defects in the affidavit because Investigator Hughes did not conduct any prior surveillance of the home for drug activity, did not use video- or audio-recording equipment during the buy, lost sight of the CS when the CS entered the front porch area, never saw the Appellant during the drug-buy, and did not receive any information as to whether the CS saw drugs or other persons in the home. The Appellant also contends that Investigator Hughes's testimony that he was able to maintain surveillance of the CS was "incredulous when the video admitted into evidence at the suppression hearing is viewed."

## II. Analysis

Initially, the State contends that we do not have jurisdiction to review the certified question because the Appellant failed to reserve the certified question properly. Specifically, the State argues that the certified question is not "narrowly tailored" in that the question challenges whether the four corners of the affidavit established probable cause to issue the search warrant whereas the crux of the Appellant's argument at the suppression hearing and on appeal relates to Investigator Hughes's credibility.

---

[1] The transcript of the plea hearing is not in the appellate record.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) provides that a certified question may be reserved when:

> (A) the defendant entered into a plea agreement under Rule 11(c) but explicitly reserved-with the consent of the state and of the court-the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> > (i)  the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
> >
> > (ii)  the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
> >
> > (iii)  the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> >
> > (iv)  the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

As noted by the State, our supreme court has said that

> the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.  For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1998); see also State v. Pendergrass, 937 S.W.2d 834, 836 (Tenn. 1996).  It is the defendant's burden to ensure compliance with the requirements of Rule 37(b).  See Pendergrass, 937 S.W.2d. at 838.

At oral argument, the State claimed that the only issue challenged in the motion to suppress and at the suppression hearing was Investigator Hughes's truthfulness that he maintained visual surveillance of the CS. We disagree. The Appellant also argued in the motion and at the hearing that the affidavit failed to establish probable cause for issuance of the warrant because the affidavit failed to establish the CS's reliability. Granted, defense counsel spent considerable time at the suppression hearing challenging Investigator Hughes's ability to maintain visual contact of the CS. However, defense counsel also questioned Investigator Hughes about the CS's reliability and gave an extensive opening statement as to why the controlled drug-buy did not cure the CS's unreliability in the affidavit. In denying the motion, the trial court found that while "the two prongs were not met" in the affidavit, the controlled drug-buy cured the deficiencies. The Appellant's certified question asks whether probable cause existed for issuance of the search warrant and "specifically, whether there was sufficient police corroboration to cure the defect of the unreliability of the confidential source." Therefore, we have jurisdiction to review the certified question.

That said, "[n]o issue beyond the scope of the certified question will be considered." Preston, 759 S.W.2d at 650. Accordingly, our review is limited to whether the four corners of the affidavit contained sufficient police corroboration to cure the CS's unreliability.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review both questions of law and the trial court's application of law to the facts purely de novo. See State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009); State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Our supreme court has explained that

[t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a

> reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998) (footnote and citations omitted). "[A] finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. In examining the affidavit, this court's standard of review is limited to whether the issuing magistrate had "'a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" State v. Tuttle, 515 S.W.3d 282, 299 (Tenn. 2017 (quoting State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989)). We note that "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

At the time of the Appellant's suppression and plea hearings, our supreme court had espoused the two-pronged Aguilar-Spinelli test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." Jacumin, 778 S.W.2d at 436; see Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). The two-pronged Aguillar-Spinelli test was required if the hearsay information was being supplied by a criminal informant or a person from a "criminal milieu." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). Specifically, "hearsay information supplied by a confidential informant [could] not support a finding of probable cause unless it also contain[ed] factual information concerning the informant's basis of knowledge and credibility." Henning, 975 S.W.2d at 294-95 (citing Jacumin, 778 S.W.2d at 432, 436).

This court has explained that "under the . . . 'basis of knowledge' prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information or claim regarding criminal conduct." State v. Lowe, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996); see also State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). The reliability, veracity, or credibility prong deals with the truthfulness of the informant in which "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Moon, 841 S.W.2d at 338. Courts have stressed that conclusory statements absent supportive detail will not suffice to establish these requirements. See id. at 339. However, "independent police corroboration of the information provided by the informant may make up deficiencies in either prong." State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000). "The requisite volume or detail of information needed to establish the informant's credibility is not particularly great."

- 9 -

Lowe, 949 S.W.2d at 305.  Nevertheless, "the affiant must provide some concrete reason why the magistrate should believe the informant."  Id.

One month before the Appellant filed his appellate brief, our supreme court announced that it was abandoning the "rigid" Aguillar-Spinelli test adopted in Jacumin and adopting a totality-of-the-circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a search warrant.  Tuttle, 515 S.W.3d at 307-08.  However, in doing so, our supreme court did not take the informant's basis of knowledge and veracity "out of the equation."  As the court explained,

> We reiterate that, under the totality-of-the-circumstances analysis, the informant's basis of knowledge and veracity or credibility remain highly relevant considerations.  Rather than separate and independent considerations, they "should [now] be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."

Id. (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

Turning to the instant case, Investigator Hughes stated in the affidavit that the CS contacted him and accused the Appellant of selling cocaine from the Appellant's home at 743 Newbern Roellen Road.  The affidavit did not provide any basis of knowledge for the CS's information.  However, although not mentioned by the trial court in its ruling at the suppression hearing, Investigator Hughes stated in the affidavit that he confirmed the Appellant lived at the residence by searching vehicle registration records and finding a car registered to the Appellant at that address.  Such verification supported the CS's credibility.  The affidavit then described a controlled drug-buy in which the CS went to the Appellant's front door, the Appellant came to the door to make the exchange, and the CS returned to the officers with a white rock-like substance that field-tested positive for cocaine.  Thus, we conclude that while the CS's information in the affidavit may have failed the Aguilar-Spinelli test, sufficient police corroboration existed in the affidavit to cure the CS's unreliability.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the trial court's denial of the motion to suppress.

_____
NORMA MCGEE OGLE, JUDGE